United States District Court
District of Connecticut
FILED AT HARTFORD
12/18/03
Kevin F. Rowe, Clerk
By_____
Deputy Clerk

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

MARK RIORDAN and
KATHLEEN BRUZY

   PLAINTIFFS,

VS.           NO. 3:02cv1132(DJS)

TROOPER ANDRE JOYNER, ET AL.,

   DEFENDANTS.     December 11, 2003

### PLAINTIFF'S LOCAL RULE 9(c)2 STATEMENT

I. **RESPONSE TO FACTS ASSERTED BY DEFENDANT HANNON**

  1. Admit.

  2. Admit.

  3. Admit.

  4. Admit.

  5. Admit.

  6. Admit.

  7. Admit.

  8. Admit.

  9. Admit.

  10. Admit.

  11. Deny.

12. Deny.

13. Admit.

14. Admit.

15. Admit.

16. Admit.

17. Admit.

18. Deny

19. Admit.

20. Admit.

21. Admit.

22. Deny.

23. Admit.

24. Deny.

25. Admit.

26. Deny.

27. Admit.

II. **ISSUES OF MATERIAL FACT AS TO WHICH THERE IS A GENUINE ISSUE TO BE TRIED**

On December 19, 2001, shortly after 11:06 p.m., the defendant Joyner stopped the motor vehicle that the plaintiff Kathleen Bruzy was operating in a lawful manner. Deposition Transcript of Plaintiff Kathleen Bruzy Deposition, July 30, 2003, (hereinafter

"Tr.") at 15. The plaintiff had violated no traffic laws or any laws whatsoever. Tr., at 16, 19. At the stop, the defendant Joyner yelled, screamed and shouted at the plaintiff. Tr., at 19, 20, 22. For several minutes during the stop, the defendant Joyner aimed a loaded AR-15 .223 caliber assault rifle at the plaintiff. Tr., at 19, 22-23; Affidavit of Joyner. Throughout the time the defendant Joyner pointed the assault rifle at the plaintiff, the rifle was not safe, and ready to fire. Affidavit of Joyner. Only after several minutes of pointing the loaded weapon at the plaintiff did the defendant make the weapon safe. Tr., at 25; Affidavit of Joyner. At gunpoint, Joyner forced the plaintiff out of her car. Tr., at 22-25. The defendant Joyner purports to be aware of Connecticut State Police Regulations 16.10.5d (5), CALEA 61.3.3b, "High risk traffic or 'felony stops,'" which states: "Do not approach the vehicle alone unless the driver is the only occupant and **there is no back-up available to assist you.**" Affidavit of Joyner; Attachments. The defendant Joyner failed to wait for backup Troopers and officers before he approached Ms. Bruzy, at riflepoint, despite being informed by the dispatcher that Trooper Timothy Webster was assigned as his backup, that Trooper Mark Weiner and Defendant Whelan were responding to the scene, and that North Haven Police officers were en route to his location as well. Tr., at 28-29; Affidavit of Whelan. Joyner, a male officer, then searched the female plaintiff's person, finding nothing. Tr., at 26. Nevertheless, Joyner handcuffed the plaintiff, and forced her to remain outside of her car at the side of the highway . Tr., at 24-27.

Joyner then demanded of the plaintiff, three times, whether she had a gun or pistol permit. Tr., at 23-24, 40. The plaintiff truthfully responded "No." Tr., at 24, 40-41. Nevertheless, the defendant Joyner searched the plaintiff's automobile and her purse, without her consent. Tr., at 39. The defendant left the contents of the plaintiff's purse strewn about. Tr., at 58-59. During the search Joyner threatened the plaintiff, "I'd better not find a gun." Tr., at 40. The defendants found no gun, no shell casings, nor did they detect the odor of gunpowder. Tr., at 59; Investigation Report of Joyner; Affidavit of Joyner. The defendants found nothing unlawful in the plaintiff's automobile, her purse, or on her person. Id. The plaintiff did not have a gun, never owned a gun, and of course, did not fire a gun from her car. Tr., at 54-55. The plaintiff was not smoking, nor did a loud noise emanate from her automobile that night. Tr., at 55. Nevertheless, the plaintiff remained handcuffed at the roadside. Tr., at 46. The plaintiff Bruzy was not free to leave the scene. Tr., at 52. The plaintiff Bruzy was held at gunpoint and handcuffed for approximately twenty minutes. Tr., at 46. Thereafter, defendant Joyner ordered the plaintiff Bruzy to remain seated in her car. Tr., at 45.

Although in a separate car, the defendant Joyner ordered North Haven officers present to "check out" the plaintiff Riordan. Tr., at 35. There is no indication that other members of the North Haven Police Department were present on the scene. See Generally, Affidavits of Joyner and Hannon. There was no information from any source that Riordan had committed a crime or engaged in any unlawful act. Affidavit of Hannon, Joyner and Tr. of Riordan and Bruzy, generally. All of the defendants were

aware that the driver of the separate car was the plaintiff Riordan, the plaintiff Bruzy's fiancé. Tr., at 35-36. As a result of Joyner's order, however, the plaintiff Riordan was removed from his car, handcuffed, and his car searched. Tr. of Riordan, at 27-31, 33-35; Tr., 47-48. The plaintiff Riordan was not free to leave the scene. Tr. of Riordan, at 34. Throughout the time of the plaintiff Riordan's detention, the defendant Hannon knew that he had no reason whatsoever to detain, search or arrest the Riordan. Tr. of Riordan; Tr. of Bruzy, generally. The handcuffs on the plaintiff Riordan were tight, and hurt him. Tr. of Riordan, at 35-37. Riordan requested that the handcuffs be loosened or removed, but this request was refused. Tr. of Riordan, at 37. The handcuffs were allowed to remain tight, and got tighter for eight or nine minutes, hurting Riordan's wrists. Id., at 37-38.

The defendants claim that an individual telephoned the police and stated that the plaintiff Bruzy had fired a gun at him on the highway. Tr., at 44, 53-55. The defendants did not know the caller. Affidavit of Joyner, Investigation Report of Joyner. To their knowledge they had never before received any information from him. Id. The defendants made no effort whatever to corroborate the information with independent police work, or even to check on the veracity of the caller or the false information before holding the plaintiffs at gunpoint and in handcuffs. Id. Despite the fact that the caller was present at the arrest of the plaintiffs, the defendants made no effort to obtain any information from him prior to their actions against the plaintiffs. Id. The defendants did not attempt to obtain a visual identification of the plaintiffs by the caller, although he was

present at the scene. Id. Only after the events described did the defendants ascertain that there was no bullet damage to the caller's car. Id.

The plaintiffs Bruzy and Mark Riordan were not free to leave the scene until defendant Joyner curtly told them that he "hate[d] to dust you off and send you on your way, but your free to go now." Tr., at 52. The defendants held the plaintiffs on the scene approximately more that twenty minutes. Tr., at 46. Upon releasing the plaintiffs, the defendant Joyner admitted that it was all a mistake, that the plaintiffs were wrongfully stopped and detained, and that, in fact, the plaintiffs had committed no crime or infraction whatever. Tr., at 52-55.

As a result of the false arrest and the traumatic events, the plaintiffs have suffered emotional and mental distress. Tr., at 61; Tr. of Riordan. Throughout the event, the plaintiffs, the Bruzy in particular, were terrified and bewildered, and had no idea what was going on, or why. Id. On a subsequent occasion, the plaintiff Bruzy saw a police officer while traveling in her car and became so overwhelmed with fear and nausea that she had to pull over and call her fiancé Riordan to come to her assistance. Tr., at 61-63. Neither plaintiff has ever been arrested or committed a crime, and the plaintiffs have never before been pulled over by a police officer in this manner. Tr., at 63-64.

Kathleen Bruzy and Mark Riordan

By Their Attorney

_____
Robert M. Berke
135 Elm Street
Bridgeport, CT 06604
203 332-6000
203 332-0661 fax
Fed Bar No. 20784

## CERTIFICATION OF SERVICE

I certify that copies have been delivered to counsel of record as listed below, on this date:

December 11, 2003:

Stephen Sarnowski
Assistant Attorney General
MacKensie Hall
110 Sherman Street
Hartford, CT 06105
(860)808-5450


Robert Rhodes, Esq.
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880


Robert Cuilla, Esq.
Cuilla & Donofrio, LLP
127 Washington Avenue
PO Box 219
North Haven, CT 06473

_____
Robert M. Berke