United States District Court
District of Connecticut
FILED AT HARTFORD
12/8/03
Kevin F. Rowe, Clerk
By
Deputy Clerk

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARK RIORDAN and | : | |
| KATHLEEN BRUZY | : | |
| | : | |
| PLAINTIFFS, | : | |
| | : | |
| VS. | : | NO. 3:02cv1132(DJS) |
| | : | |
| TROOPER ANDRE JOYNER, ET AL., | : | |
| | : | |
| DEFENDANTS. | : | December 11, 2003 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT HANNON'S
MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

The plaintiffs have brought the instant action against several individual police

officer defendants.  Defendant Hannon has moved for summary judgment on all counts

pending against him.

In essence, the plaintiffs contend that they were detained and searched by the

defendants without probable cause or articulable suspicion; that the detention rose to

the level of an arrest as they were not free to leave; and that the defendants used

unreasonable force in, inter alia, holding them at gunpoint, handcuffing them, and

physically restraining and moving them, as neither probable cause nor articulable

suspicion existed for the detention.

For the reasons set forth herein, Defendant Hannon's motion should be denied in its entirety.[1]

## II.   STATEMENT OF FACTS

On December 19, 2001, shortly after 11:06 p.m., the defendant Joyner stopped the motor vehicle that the plaintiff Kathleen Bruzy was operating in a lawful manner. Deposition Transcript of Plaintiff Kathleen Bruzy Deposition, July 30, 2003, (hereinafter "Tr.") at 15.  Plaintiff Bruzy had violated no traffic laws or any laws whatsoever.  Tr., at 16, 19.  At the stop, the defendant Joyner yelled, screamed and shouted at Plaintiff Bruzy.  Tr., at 19, 20, 22.  For several minutes during the stop, the defendant Joyner aimed a loaded AR-15 .223 caliber assault rifle at Plaintiff Bruzy.  Tr., at 19, 22-23; Affidavit of Joyner.  Throughout the time the defendant Joyner pointed the assault rifle at Plaintiff Bruzy, the rifle was not safe, and ready to fire.  Affidavit of Joyner.  Only after several minutes of pointing the loaded weapon at the plaintiff did the defendant make the weapon safe.  Tr., at 25; Affidavit of Joyner.  At gunpoint, Joyner forced Plaintiff Bruzy out of her car.  Tr., at 22-25.  The defendant Joyner purports to be aware of Connecticut State Police Regulations 16.10.5d (5) , CALEA 61.3.3b, "High risk traffic or 'felony stops,'" which states: "Do not approach the vehicle alone unless the driver is the only occupant and **there is no back-up available to assist you.**"  Affidavit of Joyner; Attachments.  The defendant Joyner failed to wait for backup Troopers and officers before he approached Ms. Bruzy, at riflepoint, despite being informed by the dispatcher

---

[1] The plaintiffs are abandoning their action for malicious prosecution against the instant defendant.

that Trooper Timothy Webster was assigned as his backup, that Trooper Mark Weiner and Defendant Whelan were responding to the scene, and that North Haven Police officers were en route to his location as well. Tr., at 28-29; Affidavit of Whelan. Joyner, a male officer, then searched the female plaintiff's person, finding nothing. Tr., at 26. Nevertheless, Joyner handcuffed Plaintiff Bruzy, and forced her to remain outside of her car at the side of the highway . Tr., at 24-27.

Joyner then demanded Plaintiff Bruzy, three times, whether she had a gun or pistol permit. Tr., at 23-24, 40. Plaintiff Bruzy truthfully responded "No." Tr., at 24, 40-41. Nevertheless, the defendant Joyner searched the plaintiff's automobile and her purse, without her consent. Tr., at 39. The defendant left the contents of Plaintiff Bruzy's purse strewn about. Tr., at 58-59. During the search Joyner threatened Plaintiff Bruzy, "I'd better not find a gun." Tr., at 40. The defendants found no gun, no shell casings, nor did they detect the odor of gunpowder. Tr., at 59; Investigation Report of Joyner; Affidavit of Joyner. The defendants found nothing unlawful in the Plaintiff Bruzy's automobile, her purse, or on her person. Id. Plaintiff Bruzy did not have a gun, never owned a gun, and of course, did not fire a gun from her car. Tr., at 54-55. Plaintiff Bruzy was not smoking, nor did a loud noise emanate from her automobile that night. Tr., at 55. Nevertheless, Plaintiff Bruzy remained handcuffed at the roadside. Tr., at 46. Plaintiff Bruzy was not free to leave the scene. Tr., at 52. Plaintiff Bruzy was held at gunpoint and handcuffed for approximately twenty minutes. Tr., at 46. Thereafter, defendant Joyner ordered the plaintiff Bruzy to remain seated in her car. Tr., at 45.

Although in a separate car, the defendant Joyner ordered other officers present to "check out" the plaintiff Riordan. Tr., at 35. The defendant Joyner had no information from any source that Riordan had committed a crime or engaged in any unlawful act. Tr, generally. The defendant Joyner was aware that the driver of the separate car was the plaintiff Riordan, the plaintiff Bruzy's fiancé. Tr., at 35-36. As a result of Joyner's order, however, the plaintiff Riordan was removed from his car, handcuffed, and his car searched. Tr. of Riordan, at 27-31, 33-35; Tr., 47-48. The plaintiff Riordan was not free to leave the scene. Tr. of Riordan, at 34. Throughout the time of the plaintiff Riordan's detention, the defendant Joyner knew that he had no reason whatsoever to detain, search or arrest the Riordan. Tr. of Riordan; Tr. of Bruzy, generally. The handcuffs on the plaintiff Riordan were tight, and hurt him. Tr. of Riordan, at 35-37. Riordan requested that the handcuffs be loosened or removed, but this request was refused. Tr. of Riordan, at 37. The handcuffs were allowed to remain tight, and got tighter for eight or nine minutes, hurting Riordan's wrists. Id., at 37-38.

The defendants claim that an individual telephoned the police and stated that the plaintiff Bruzy had fired a gun at him on the highway. Tr., at 44, 53-55. The were no allegations regarding any criminal or suspicious conduct on the part of Plaintiff Riordan, nor was he alleged to have violated any motor vehicle laws. The defendants did not know the caller. Affidavit of Joyner, Investigation Report of Joyner. To their knowledge they had never before received any information from him. Id. The defendants made no effort whatever to corroborate the information with independent police work, or even to check on the veracity of the caller or the false information before holding the plaintiffs at

gunpoint and in handcuffs.  Id.  Despite the fact that the caller was present at the

detention of the plaintiffs, the defendants made no effort to obtain any information from

him prior to their actions against the plaintiffs.  Id.  The defendants did not attempt to

obtain a visual identification of the plaintiffs by the caller, although he was present at the

scene.  Id.  Only after the events described did the defendants ascertain that there was

no bullet damage to the caller's car.  Id.

The plaintiffs Bruzy and Riordan were not free to leave the scene until defendant

Joyner curtly told them that he "hate[d] to dust you off and send you on your way, but

your free to go now."  Tr., at 52.  The defendants held the plaintiffs on the scene

approximately more that twenty minutes.  Tr., at 46.  Upon releasing the plaintiffs, the

defendant Joyner admitted that it was all a mistake, that the plaintiffs were wrongfully

stopped and detained, and that, in fact, the plaintiffs had committed no crime or

infraction whatever.  Tr., at 52-55.

The defendant Whelan was the Shift supervisor on the evening of the incident.

Affidavit of Whelan.  Defendant Whelan proceeded to the scene, was present thereon,

and provided both supervision and assistance to defendant Joyner.  Affidavit of Whelan.

As a result of the false arrest and the traumatic events, the plaintiffs have

suffered emotional and mental distress.  Tr., at 61; Tr. of Riordan.  Throughout the

event, the plaintiffs, the Bruzy in particular, were terrified and bewildered, and had no

idea what was going on, or why.  Id.  On a subsequent occasion, the plaintiff Bruzy saw

a police officer while traveling in her car and became so overwhelmed with fear and

nausea that she had to pull over and call her fiancé Riordan to come to her assistance.

Tr., at 61-63. Neither plaintiff has ever been arrested or committed a crime, and the plaintiffs have never before been pulled over by a police officer in this manner. Tr., at 63-64.

## III.  ARGUMENT

### A.  Summary Judgment Standard

"The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue of material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard." DHR Construction Co., Inc. v. Thomas J. Donnelly, 180 Conn. 430, 434, 429 A.2d 908 (1980).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103,

998 F.2d 129 (2d Cir. 1993); <u>Union Pacific Corp. v. United States</u>, 5 F.3d 523, 525 (Fed.

Cir. 1993); <u>Suarez v. Dickmont Plastics Corp.</u>, 229 Conn. 99, 105 (1994); <u>D.H.R.</u>

<u>Construction Co. v. Donnelly</u>, 180 Conn. 430, 434 (1980); <u>Connell v. Colwell</u>, 214 Conn.

242, 246-47 (1990). "If, as to the issue on which summary judgment is sought, there is

any evidence in the record from which a reasonable inference could be drawn in favor of

the opposing party, summary judgment is improper." <u>Gummo v. Village of Depew</u>, 75

F.3d 98, 107 (2d Cir. 1996).

 To raise a genuine issue of material fact sufficient to defeat a summary judgment

motion, the opponent need not match, item for item, each piece of evidence proffered by

the moving party. So long as the opponent has offered enough evidence to exceed the

"mere scintilla" threshold, summary judgment is to be denied. <u>In re Unisys Savings Plan</u>

<u>Litigation</u>, <u>supra</u>, 74 F.3d 420, 433.

 Even if the nonmoving party's evidence appears "implausible," the court may not

"weigh" the evidence and must proceed with the greatest caution. <u>R. B. Ventures, Ltd.</u>

<u>v. Shane</u>, 112 F.3d 54, 58-59 (2d Cir. 1997). "If reasonable minds could differ as to the

import of the evidence...and if...there is any evidence in the record from any source from

which a reasonable inference in the nonmoving party's favor may be drawn, the moving

party simply cannot obtain a summary judgment." <u>Id.</u> at 59, quoting <u>Brady v. Town of</u>

<u>Colchester</u>, 863 F.2d 205, 211 (2d Cir. 1988), and <u>In re Japanese Elec Prods. Antitrust</u>

<u>Litigation</u>, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

 "A dispute regarding a material fact is genuine 'if the evidence is such that a

reasonable jury could return a verdict for the non moving party.' <u>Anderson v. Liberty</u>

Lobby, Inc., 477 U.S. 242, 248 (1986).  Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."'  Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997).  Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

A party opposing summary judgment may do so by an affidavit clarifying that party's prior deposition testimony.  Ramos v. Geddes, 137 F.R.D. 11 (S.D. Tex. 1991).

Hearsay evidence, while not admissible in support of a motion for summary judgment, **is** sufficient to defeat a summary judgment motion so long as there is reason to believe that the evidence can be offered in an admissible form at trial.  McMillian v. Johnson, 88 F.3d 1573, 1584 (11th Cir. 1996); Williams v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1990); Tetra Technologies, Inc. v. Harter, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993); Cerniglia v. LeVasseur, 19 Conn. L. Rptr. No. 4, 119 (1997).

## B. THE PLAINTIFFS' CLAIMS OF FALSE ARREST SURVIVE DEFENDANT HANNON'S MOTION FOR SUMMARY JUDGMENT BECAUSE THERE WAS NO REASONABLE ARTICULABLE SUSPICION TO JUSTIFY THE INVESTIGATORY STOP AND DETENTION.

In order to establish  a claim for false arrest under Section 1983, a plaintiff is required to make a showing "that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was aware of the confinement, and (3) the confinement was not otherwise privileged."Clynch v. Chapman, 285 F.Supp. 2d 213, 225-226 (D.Conn 2003).

Contrary to the assertions of Defendant Hannon, the Plaintiffs' claims of false arrest do not fail due to the fact that they were not arrested and charged with a crime. The mere fact that they were confined or seized, without consent and without authority, is sufficient to establish such a claim.

A §1983 claim for false arrest rests on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause. See, e.g., Lennon v. Miller, 66 F.3d 416, 423 (2d Cir.1995); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir.1995), cert. denied, 517 U.S. 1189 (1996); Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir.1992); Posr v. Doherty, 944 F.2d 91, 96 (2d Cir.1991). In the absence of probable cause to arrest, an action for false arrest exists. Bernard v. United States, 25 F.3d 98, 102 (2d Cir.1994). An investigatory detention rises to the level of an arrest when a reasonable person in the detained person's position would have understood her situation as being "tantamount to arrest." Berkemer v. McCarty, 468 U.S. 420, 441 (1984). An investigatory stop which rises to the level of an arrest – where the detainee is not free to leave – as here, constitutes false arrest in the absence of probable cause. Id.; Florida v. Royer, 460 U.S. 491 (1983). As the defendants themselves concede, "a seizure which is, defacto, tantamount to an arrest cannot fit within th[e Terry] exception." Id.; Terry v. Ohio, 392 U.S. 1 (1968)

In the present case, the facts clearly indicate that the plaintiffs were both under arrest. A person is "seized" under the Fourth Amendment when based upon all of the circumstances surrounding the incident; a reasonable person would believe that they were not free to leave. United States v. Mendenhall, 446 U.S. 544, 554 (1980). Seizure

of plaintiff Bruzy and plaintiff Riordan took place when the defendants handcuffed them and restricted their movement. An investigatory detention becomes an arrest when a reasonable person in the detainee's position would have understood that their situation as being tantamount io an arrest." Berkermer v. MacCarty, 468 U.S. 420, 421 (1984). When there is an arrest and it is not supported by probable cause, then it constitutes a false arrest. Id.

In general, probable cause to arrest exists only when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime. See, e.g., Dunaway v. New York, 442 U.S. 200, 208 n. 9 (1979); Wong Sun v. United States, 371 U.S. 471, 479 (1963); Brinegar v. United States, 338 U.S. 160, 175-76 (1949). The application of this principal to cases arising in Connecticut is more strict, however. Under Connecticut state law, probable cause "comprises such facts as would reasonably persuade an impartial and reasonable mind **not merely to suspect or conjecture, but to believe that criminal activity has occurred."** State v. Barton, 594 A.2d 917, 928 (1991)(emphasis supplied).

It is well established that the question of whether or not probable cause existed may not be determined as a matter of law if there is dispute as to the pertinent events or the knowledge of the officers. Singer v. Fulton County Sheriff, 63 F.3d at 118-19 (2nd Cir 1989) . Where facts are in dispute, trial is required. Moore v. Comesanas, 32 F.3d 670, 673 (2d Cir.1994) (question of whether arresting officer had probable cause properly presented to the jury). The issue of probable cause, which is predominantly factual in

nature, is properly presented to the jury.  See Fassett v. Haeckel, 936 F.2d 118, 120-21

(2d Cir.1991);  Gramenos v. Jewel Co., Inc., 797 F.2d 432, 438 (7th Cir.1986), cert.

denied, 481 U.S. 1028 (1987);  Ham v. Greene, 248 Conn. 508 (1999);  Smith v. County

of Nassau, 34 N.Y.2d 18, 25 (1974);  Clark v. Nannery, 292 N.Y. 105, 107-08 (1944).

The district court is correct in submitting factual interrogatories which ask the jury to find

whether "a reasonable, prudent officer would have believed, based upon reasonably

trustworthy information, that there existed probable cause" to arrest or prosecute the

plaintiff. Moore v. Comesanas, 32 F.3d at 673.

In the present case there is no dispute that the plaintiffs' were detained without

consent.  The issue to be determined by the jury is whether such detention was

reasonable.

### C. DETENTION BASED UPON "TIP" OF CITIZEN INFORMANT

An citizen informers tip to a police officer has been deemed to retain "a likelihood

of accuracy."Caldarola v. Calabrese, 298 F.3d 156, 163 (2d Cir. 2002)

Information from a citizen who purports to be a victim of or eyewitness to a crime

may provide an officer with probable cause, but only under very specific circumstances.

Singer v. Fulton County Sheriff, 63 F.3d at 119.  The case of Loria v. Gorman, offered

by the defendants, does not exempt the police officer from obtaining sufficient indicia of

reliability of the informant and the information, as suggested by them in their brief.  306

F3d 1271, 1290 (2nd Cir. 2002); Defendants' Memorandum of Law, p. 21.  Singer, upon

which the holding in Loria is based, holds that "[a]n arresting officer advised of a crime

by a person who claims to be the victim, **and who has signed a complaint or**

**information charging someone with the crime**, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity. Singer v. Fulton County Sheriff, 63 F.3d at 119; citing Hebron v. Touhy, 18 F.3d 421, 422-423 (7th Cir.1994); Miloslavsky v. AES Engineering Soc., Inc., 808 F.Supp. 351, 355 (S.D.N.Y.1992), aff'd, 993 F.2d 1534 (2d Cir.), cert. denied, 510 U.S. 817, 114 S.Ct. 68 (1993)(emphasis supplied).

In the instant case the defendant Joyner "received a dispatch over the radio . . . [in which] Dispatcher D'Elia sent [him] to Interstate 91 Northbound near Exit 8 to investigate a motorist's report that a passing vehicle had fired a gunshot at him." Affidavit of Joyner, ¶ 3. Although defendant Joyner asserts in his Affidavit that the caller gave the dispatcher the license plate number of the vehicle operated by the plaintiff Bruzy, no such claim is made by defendant Joyner in his signed police report, attached to his Affidavit. Investigation Report of Joyner. At the time of the arrest, the plaintiff Bruzy testified that defendant Joyner informed her that the caller claimed that "the incident occurred at Exit 6 northbound on 91." Tr., at 60. The plaintiff informed the defendant that "there is no Exit 6 northbound," to which Joyner replied, "Okay, then Exit 8." Tr., at 60.

This scant information, containing a glaring inaccuracy about the exit number of which a patrolling Trooper surely would have known, was the sum total of the information possessed by Joyner before he stopped and arrested the plaintiffs. Joyner conducted no independent investigation into the allegations. Joyner witnessed no unlawful behavior. Joyner made no attempt to determine the reliability or credibility of

the informant. Joyner, in fact, had no information whatsoever about the informant. Joyner certainly did not obtain a signed complaint or information from the caller charging her with a crime. Singer, at 119. Joyner did not even interview the caller before he forced the plaintiff out of her car at the point of a loaded assault weapon, although the caller was in a car right behind Joyner. Joyner ignored the imaginary exit location, a circumstance which, to a reasonable officer, raises doubts as to the victim's veracity.

Further, Trooper Joyner, in his affidavit, states that he directed "the North Haven officers to check out that [Riordan's] vehicle which had pulled over in front of us. However, at some point, I became aware that the other vehicle was occupied by the female suspect's boyfriend, and that it did not contain any weapons." Affidavit of Joyner, paragraph 11.

Trooper Joyner also attested that [w]hile the North Haven police officers dealt with the other vehicle, I continued my investigation into the original complaint. Affidavit of Joyner, paragraph 12.

These factual assertions are contrary to the affidavit presented by Officer Hannon, who states that he had no involvement with the speak to, stop, search, detention or administration of handcuffs. Affidavit of Hannon, paragraphs 4-10.

As such, the detention of the plaintiffs was unconstitutional, and upon this point the defendants' motion for summary judgment must be denied.

Further, the search of the plaintiffs,' their effects and motor vehicles were unreasonable.

**D.   PROOF OF 'SIGNIFICANT OR PERMANENT INJURY IS NOT REQUIRED TO ESTABLISH A CLAIM OF EXCESSIVE FORCE.**

Defendant Hannon asserts that the plaintiffs cannot prevail on their claims of excessive force due to the fact that there was no significant or permanency to the injuries.  The defendant cites, as authority, a three part test articulated by the Fifth Circuit, that has not been adopted in the Second circuit.  See Johnson v. Morel, 876 F.2d 477,480 (5th Cir 1989). Sabir v. Jowett, 214 F.Supp 2d 226, 245-246 (D. Conn. 2002) (expert witness is not required to sustain an award of emotional distress in Section 1983 cases.); Larocco v. NYC Dept of Corrections, 2001 US Dist LEXIS 13839, SDNY (an inmate asserting a fourth amendment violation need not establish serous injury or needed medical attention): O'Neill v. Krzeminski, 839 F.2d 9, 13 (2d Cir. 1988) (plaintiff, claiming excessive force, entitled to full compensation, despite no permanent physical disability);. Robison v. Via, 821 F.2d 913, 924 (2d Cir 1987) (if force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.)

Wherefore the plaintiff's excessive force claim should not fail due to the absence of "significant" or severe injury.


**E.      THE ABSENCE OF MEDICAL TREATMENT IS NOT FATAL TO THE PLAINTIFFS' CLAIM OF SEVERE EMOTIONAL DISTRESS**

Defendant Hannon asserts that the plaintiffs failure to seek medical treatment

undermines their claim for emotional distress.  As stated by Judge Arterton, in <u>Clynch v.</u>
<u>Chapman</u>, 285 at 229-230, "trial is necessary to permit a jury to make findings on
severity in light of the Connecticut Supreme Court's determination that a jury award for
intentional infliction of emotional distress may stand despite the absence of medical or
other treatment, citing, <u>Berry v. Loiseau</u>, 223 Conn. 786, 808-811 (1992).; <u>Schanzer v.</u>
<u>United Tech Corp</u>, 120 F. Supp 2d. 217 (D. Conn. 2000) ( "there is no requirement that
a claim for emotional distress be supported by medical evidence.")

        Plaintiff Bruzy was distraught as a result of this incident, and had to pull over two
weeks after the incident because she became nervous when she saw a police vehicle
behind her auto. Tr. At 62.  She was very emotional and became nauseous. Id.  She
called Plaintiff Riordan and began to cry and was very nervous. Id.  Approximately, six
months after the incident, Plaintiff Bruzy left a part-time job that she held because it
required her to drive in the evening, and was reluctant to do so after the incident. Tr. At
65-66.


## F. THE REASONABLENESS OF PLAINTIFFS' STOP, DETENTION AND SEARCH IS A JURY QUESTION AND THE DEFENDANT HANNON IS NOT ENTITLED TO QUALIFIED IMMUNITY.

        The applicable standard in unreasonable search and seizure cases was
delineated in <u>Graham v. Connor</u>, 490 U.S. 386, 109 S.Ct. 1865 (1989) and remains the
standard today.  <u>Id.</u>  Our Supreme Court there held that fourth amendment claims
against police officers arising under 42 U.S.C. 1983 are to be analyzed under the Fourth

Amendment's "objective reasonableness" standard. Id.  This reasonableness standard entails a fact-intensive inquiry, and "its proper application requires careful attention to the facts and circumstances of each particular case." Graham, 490 U.S. at 396.

The question of reasonableness in the fourth amendment context is one for the jury in a civil rights action alleging unreasonable detention. Calamia v. New York, 879 F.2d 1025, 1036 (2d Cir.1989)(unreasonable force);  Lennon v. Miller 66 F.3d 416 (2nd Cir. 1995)(presence of factual disputes bars summary judgment); see, Ham v. Greene, 248 Conn. 508 (1999). Factual disputes as exist in the instant case bar summary judgment.  In determining a violation of the fourth amendment, "[r]esolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [are] properly not decided by the district court on summary judgment." Robison v. Via, 821 F.2d 913, 924 (2d Cir.1987).

The right of an individual not to be subjected to false arrest is clearly established, and is not disputed by the defendants here. Gonzalez v. Bratton et al., 147 F.Supp.2d 180, 201 (S.D.N.Y. 2001);  Lauro v. Charles, 219 F.3d 202, 212 (2000);  Aveni v. Mottola, 35 F. 3d 680, 684 (2d Cir. 1994);  Graham v. Connor, 490 U.S. 386, 395 (1989);  County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991);  Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995);  Weyant v. Okst, 101 F.3d 845, 853 (2nd Cir. 1996);  Coakley v. Jaffe, 49 F. Supp. 2d 615, 624 (S.D.N.Y. 1999);  Breen v. Garrison, 169 F.3d 152, 152-154 (2d Cir. 1999).

Therefore, the defense of qualified immunity is unavailable as long as there is a factual question as to the presence or absence of probable cause.  As in other claims

fourth amendment violations centering on reasonableness, It is proper to leave the question of qualified immunity to the jury. In the case of the reasonableness of the use of force, the court has held that "[w]hether the officer reasonably believed that their use of force was not excessive [is] properly a jury issue." Posr v. Doherty, 944 F.2d 91, 96 (2d Cir.1991) (holding that since fact-finding is integral to determine whether or not officers reasonably believed that their use of force was not unconstitutionally excessive, the question of qualified immunity on issue of excessive force in a §1983 action is properly for the jury, not the court). Only where there is no dispute about the material facts should the court assess the reasonableness of the defendants' conduct under the circumstances presented in order to determine on summary judgment whether the defendants are entitled to qualified immunity. Lennon, at 421. Where, as in the instant case, issues of material fact exist, those issues must be left to the jury for their determination prior to the court's consideration of the qualified immunity defense. Id.

The law is clear that only in the absence of genuine disputes of material fact may the court find in favor of defendants on the issue of liability in unreasonable force and false arrest litigation. Similarly, only when no dispute of material fact exists may the court assume the jury's role and determine the objective reasonableness of the actions of the defendants. Neither is the case here.

The actions of the defendant Joyner were not clearly objectively reasonable given the scant and erroneous information he had.

For the reasons advanced supra, it is clear here that the court must deny the defendants' motion.

## G. **Statutory and Sovereign Immunity**

The assertion of state law statutory and sovereign immunity by the defendants Joyner and Whelan is far simpler and less tortuous than as cast by them in their brief. In short, neither Joyner or Whelan may avail themselves of statutory or sovereign immunity from the state law claims pending against them.

Under Connecticut law, the doctrine of sovereign immunity applies when officials are sued in their official capacities. Foreman v. Beckwith, 260 F.Supp. 2d, (D.Conn. 2003). The doctrine of sovereign immunity applies when officials are sued in their official capacities and it does not apply when they are sued in their individual capacities only; statutory immunity applies in such cases. Id.; Miller v. Egan, 265 Conn. 301, 307 (2003); Bailey v. Blumenthal, No. CV020812552S, 2003 WL 356777, at *4 (Conn.Super.Jan.17, 2003); see also Shay v. Rossi, 253 Conn. 134, 162 (2000).

Statutory immunity under Connecticut General Statutes § 4-165 provides in relevant part: "No state officer or employee shall be personally liable for damages or injury, not wanton, reckless or malicious, caused by the discharge of his duties or within the scope of his employment." C.G.S. § 4-165. In order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts.... [Such conduct] is more than negligence, more than gross negligence.... [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them.... It is such conduct as

indicates a reckless disregard of the just rights or safety of others or of the consequences of the action.... [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." Barstow v. Shea, 196 F.Supp 2d 141, 151(D. Conn. 2002), citing Shay v. Rossi, 253 Conn. 134, 181 (2000) (citations omitted).

In the instant case, the defendants Whelan and Joyner have been sued in their individual, rather than official capacities. Amended Complaint. Therefore, the protection of sovereign immunity is not available to them.

The actions of the individually named defendants are plead as intentional or reckless, rather than negligent conduct. Amended Complaint. By any read of the allegations of the instant case – arrest without probable cause; handcuffing and holding plaintiffs at assault rifle gunpoint; failing to ascertain the veracity or reliability of the complainant; intentionally ignoring and changing impossible "facts" in the complainant's statement – the actions of the defendants constitute "such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action." Id. In sum, such conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." Id. The instant situation is easily distinguishable from that in Martin v. Brady, 261 Conn. 372 (2002). In Martin, the State Police defendants were acting pursuant to a valid extradition warrant issued by the State of Florida. Id., at 379. As such, the court found that the defendants were acting within the scope of their

employment, and therefore, were entitled to statutory immunity. Id. No warrant, nor even probable cause exists in the instant case.

For the foregoing reasons, the motion of the Defendant Hannon should be denied.

## III.  CONCLUSION

For the reasons articulated herein, the plaintiff requests that this honorable court deny the motion of the defendants in its entirety.

Kathleen Bruzy and Mark Riordan
By Their Attorney

Robert M. Berke
135 Elm Street
Bridgeport, CT 06604
203 332-6000
203 332-0661 fax
Fed Bar No.  20784

## CERTIFICATION OF SERVICE

I certify that copies have been delivered to counsel of record as listed below, on this date:

December 11, 2003:

Stephen Sarnowski
Assistant Attorney General
MacKensie Hall
110 Sherman Street
Hartford, CT 06105
(860)808-5450

Robert Rhodes, Esq.
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880


Robert Cuilla, Esq.
Cuilla & Donofrio, LLP
127 Washington Avenue
PO Box 219
North Haven, CT 06473


_____
Robert M. Berke